INTERNATIONAL EXPEDITERS, INC., FOR WINSOR & NEWTON, INC. v. UNITED STATES

No. 7963.—

Entry No. 782788.

(Decided March 1, 1951)

*Jordan & Klingaman (Edward F. Jordan* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

MOLLISON, Judge: The correct basis of value of the merchandise involved in this appeal for reappraisement has been conceded by both parties to be cost of production, as defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), and the issue has been limited to the addition for profit called for under item (4) of the said definition. For ready reference, section 402 (f), *supra*, is quoted in full in the margin.[1]

The case has been submitted for decision upon an agreed statement of facts as follows:

1. That the merchandise the subject of this appeal consists of artists' colors imported by WINSOR & NEWTON INC., the purchaser and ultimate consignee, from WINSOR & NEWTON LTD., of Wealdstone, Middlesex, England, manufacturers and sellers thereof, that it is described in the invoice as "Studio Tubes Series 2", that it was invoiced and entered at 39 shillings per dozen tubes, the list price, less a discount of 40 per cent plus the cost of cases (packing and woodwork) and was appraised at the said list price less a discount of 33⅓ per cent plus the cost of cases (packing and woodwork) on the basis of cost of production under Sec. 402 (f), Tariff Act of 1930.

2. That on or about March 18, 1947, the date of exportation herein and at all other times material herein such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country of exportation in the usual wholesale quantities, and in the ordinary course of trade for home consumption therein or for export to the United States and other parts of the world; that such or similar imported merchandise was not at the aforesaid times and under the aforesaid conditions freely offered in the United States for sale for domestic consumption therein; and that cost of production, as defined in Sec. 402 (f) Tariff Act of 1930, is the proper basis of appraisement of the involved merchandise.

3. That throughout the entire year 1947 and at all other times material herein the said Winsor & Newton Ltd. sold merchandise such or similar to the involved merchandise in wholesale quantities for home consumption in the country of exportation and for export to the United States and other parts of the world; and that of the total quantity so sold 42 per cent was sold for home consumption in the country of exportation, 47 per cent for export to countries other than the United States and 11 per cent for export to the United States.

---

[1] SEC. 402. VALUE.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

4. That of the total quantity so sold for home consumption in the country of exportation 31 per cent was sold at the list price less wholesalers' discount of 40 per cent plus packing, at which price the merchandise herein was entered, and 69 per cent was sold at the list price less retailers' discount of 33⅓ per cent plus packing at which price the merchandise herein was appraised; that of the total quantity so sold for export to countries other than the United States 92 per cent was sold at the said entered price and 8 per cent at the said appraised price and that the entire quantity so sold for export to the United States was sold at the said entered price.

5. That of the total individual sales of the said merchandise for home consumption in the country of exportation 35 per cent was sold at the said entered price and 65 per cent at the said appraised price; that of the total individual sales of the said merchandise for countries other than the United States 58 per cent was sold at the said entered price and 42 per cent at the said appraised price; and that all sales of said merchandise for export to the United States were made at the said entered price.

6. That of the total quantity of the said merchandise so sold for home consumption in the country of exportation and for export to countries other than the United States and for export to the United States, 67 per cent was so sold at the said entered price and 33 per cent at the said appraised price; and that of the total individual sales in all of said markets 37 per cent was sold at the said entered price and 63 per cent at the said appraised price.

7. That during the entire year 1947 and at all other times material herein both the entered price and the appraised price of the involved merchandise were made up of (a) the cost of materials, labor and all other manufacturing costs as of the time prescribed by Sec. 402 (f) (1) Tariff Act of 1930, (b) the usual general expenses (not less than 10 per cent of such cost), (c) the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and (d) an addition for profit not less than 8 per cent of the sum of items (a) and (b) above; and that the said addition for profit in the entered price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less wholesalers' discounts, and that the said addition for profit in the appraised price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less retailers' discounts.

8. That at all times material herein the facts relative to the business of such manufacturers other than Winsor & Newton Ltd. were the same in all material respects as those in the case of Winsor & Newton Ltd., the manufacturer and seller herein.

It will be seen that by virtue of paragraph 7, above, there is no dispute as to the amounts entering into the elements of cost of production included under items (1), (2), and (3) of the cost of production statute, and that the sole issue is the amount to be added for profit under item (4) of the said statute.

From a perusal of the statement of agreed facts, the following may be concluded:

A.   That in each transaction "the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind" was not a uniform amount, but was one of either of two amounts.

B.   That the difference in the profit added did not depend upon whether the merchandise was sold for home consumption, for export to countries other than the United States, or for export to the United States.

C.   That the sole determinant of the profit to be added in any transaction was the category of the purchaser, i. e., whether he was a wholesaler or a retailer, the greater profit being realized upon sales to the latter category of purchaser.

D.   That the profit added in the case of sales to wholesalers is that included in the entered value, and the profit added in the case of sales to retailers is that included in the appraised value.

Upon the agreed facts it is the contention of the plaintiff that the entered value represents the statutory cost of production of the involved merchandise for the reason that it is established by paragraph 6 of the agreed facts that the addition for profit included in the entered value is the addition which was included in the price at which the *major quantity* of the merchandise, to wit, 67 per centum, was sold, and the case of *J. H. Cottman & Co.* v. *United States* and *United States* v. *J. H. Cottman & Co.*, 20 C. C. P. A. (Customs) 344, T. D. 46114, is cited in support of this contention.

The basis upon which the defendant contends that the appraised value represents the statutory cost of production of the involved merchandise is, in effect, an extension to the cost of production statute of the major portion of sales doctrine, which heretofore has been limited to the determination of "usual wholesale quantities" called for by the foreign, export, and United States value provisions of section 402.   The defendant contends that "the profit which ordinarily is added" under the cost of production formula should be that which was included in the price at which the *major portion of all sales* was made, rather than the price at which the *major quantity of merchandise* was sold.   The greater *quantity* of merchandise was sold at the entered value, whereas the greater *number* of sales was made at the appraised value.   Paragraph 6 of the agreed facts.

The argument offered by the defendant in support of the contention above expressed is based upon the substitution or interpolation of the words "in most cases" and/or "usually" for the word "ordinarily" in the phrase "the profit which ordinarily is added," and the Oxford

Dictionary is cited as authority for the equivalence of meaning of these words. It is argued that the profit added by a manufacturer in most cases, i. e., in most sales or in the major portion of sales, is the profit ordinarily added, as it is indicative of the general practice of a manufacturer.

I believe this argument to be wholly fallacious. In my view, in a situation such as here, where the amount of profit derived from the sale of goods depended upon the status of the purchaser, the profit which is ordinarily added is that derived from the bulk of the business done by the manufacturer. The number of transactions is not necessarily (particularly at the manufacturer's level) an indicium of the bulk of the business done or of the profit which is ordinarily added. A manufacturer may have a great number of sales which nevertheless represents a minor portion of his business, and the bulk of the business may be with a few large purchasers, or even one large purchaser.

The facts in the present case are an apt illustration. Sixty-three per centum of the number of sales made by the manufacturer was to retailers, but such sales involved only 33 per centum of all the goods sold by him. The total financial return from such sales is not stated in the record, but from the agreed facts it may be seen that of every 100 units of quantity sold by the manufacturer he sold 33 units to retailers at a net price of 26 shillings per unit (39 s. less 33⅓ per centum), while he sold 67 units to wholesalers at a net price of 23 shillings 5 pence per unit (39 s. less 40 per centum). Disregarding the packing, which was the same in each case, a rough calculation indicates that the financial volume of business done with wholesalers was nearly twice that done with retailers, and it is also easily seen that the amount of profit realized from sales to wholesalers was greater than that realized from sales to retailers, which, it is agreed, in each case was more than the statutory minimum of 8 per centum.

Thus it appears that the greater quantity of all goods sold, the greater financial return, and the greater portion of profits came from sales to wholesalers, and it would seem to follow that the profits realized from such sales should be considered in the light of the statement of agreed facts and for the purposes of this case to be "the profit which ordinarily is added" within the contemplation of the statute.

The *J. H. Cottman & Co.* v. *United States* case, *supra*, cited by the plaintiff for the proposition that the amount added for profit under the cost of production statute should be computed from the profit which is realized from the major quantity of the product sold, would seem to be authority for the contention of the plaintiff, and the principle therein enunciated has been applied in this court in the

cases of *F. W. Berk & Co., Inc.* v. *United States*, 16 Cust. Ct. 365, Reap. Dec. 6282, and *United States* v. *Marine Products Co.*, 24 Cust. Ct. 615, Reap. Dec. 7830.

I find as facts:

1. That the involved merchandise consists of artists' colors exported from England in March 1947.

2. That neither the said merchandise nor similar merchandise, during the period in question, was freely offered for sale to all purchasers in the principal markets of the country of exportation in the usual wholesale quantities, and in the ordinary course of trade for home consumption or for export to the United States, and that neither such nor similar imported merchandise was at the aforesaid time and under the aforesaid conditions freely offered for sale in the United States for domestic consumption therein.

3. That during the entire year 1947 and at all other times material herein both the entered price and the appraised price of the involved merchandise were made up of (a) the cost of materials, labor, and all other manufacturing costs as of the time prescribed by section 402 (f) (1), Tariff Act of 1930, (b) the usual general expenses (not less than 10 per centum of such cost), (c) the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and (d) an addition for profit not less than 8 per centum of the sum of items (a) and (b) above, and that the said addition for profit in the entered price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less wholesalers' discounts, and that the said addition for profit in the appraised price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less retailers' discounts.

4. That under the conditions above described the greater quantity of all goods sold, the greater financial return, and the greater portion of profits came from sales to wholesalers, while the greater number of sales was to retailers.

I conclude as matters of law:

1. That the correct basis of value for the involved merchandise is cost of production as defined in section 402 (f), Tariff Act of 1930.

2. That the said cost of production of the involved merchandise is represented by the entered value.

Judgment will issue accordingly.